IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JENNIFER MONTOYA,**

      **Plaintiff,**

   **vs.**                                                                                             CIV No. 1:22-CV-00555-KRS

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Jennifer Montoya's ("Plaintiff") Opposed Motion to Reverse or Remand ("Motion") (Doc. 26), dated April 14, 2023, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34 and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85, respectively. The Commissioner responded to Plaintiff's Motion on June 9, 2023 (Doc. 30), and Plaintiff filed a Notice of Briefing Complete (Doc. 32). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in his decision and will therefore **GRANT** Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I.    PROCEDURAL POSTURE

On September 5, 2019, Plaintiff filed an initial application for DIB and SSIB. (*See* Administrative Record ("AR") at 222).[1] Plaintiff alleged she became disabled on October 1, 2017,

---

[1] Document 17 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, Plaintiff's Application for SSIB is dated September 16, 2019. (AR at 234). However, the Application

due to anxiety, depression, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (*Id.* at 222, 230).[2] Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits is, March 31, 2024.[3] (*Id.* at 16). Plaintiff's application was denied at the initial level on December 11, 2019 (*id.* at 44–67), and upon reconsideration on December 7, 2020 (*id.* at 68–79). Plaintiff requested a hearing on February 11, 2021 (*id.* at 95–96), which ALJ Jeffrey N. Holappa ("ALJ Holappa" or the "ALJ") conducted telephonically on February 11, 2022 (*id.* at 491–528).[4] Plaintiff was represented by counsel and testified at the hearing (*id.* at 491–519), as did vocational expert Beth Drury (*id.* at 519–26).

On March 8, 2022, ALJ Holappa issued his decision, finding Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 12–28). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7–11), and on June 17, 2022, the Appeals Council denied the request for review (*id.* at 1–6), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 26, 2022, Plaintiff filed her Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.  LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d

---

Summary for DIB states Plaintiff completed her application for DIB and SSIB on September 5, 2019. (AR at 222). The Court utilizes September 5, 2019, as the respective date for purposes of this Memorandum, Opinion, and Order.

[2] On her September 16, 2019, Application for SSIB, Plaintiff included bipolar disorder as a mental condition. (AR at 230). Plaintiff's Disability Report does not include bipolar disorder. (*Id.* at 277). Neither party addresses this discrepancy and, the Court need not resolve the discrepancy for purposes of this Memorandum, Opinion, and Order.

[3] In order to qualify for disability insurance benefits, a claimant must establish that they met the statutory requirements for disability on or before their date last insured. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). The Court includes the date last insured as recited by the ALJ in his March 8, 2022, decision; however, it observes that three Disability Reports indicate that Plaintiff's date last insured was June 30, 2023. (AR at 310, 345, 390). The parties do not address this date discrepancy, and the Court need not resolve the matter to decide the issues before it.

[4] ALJ Eric Weiss conducted a telephonic hearing on June 23, 2021. (*Id.* at 36–43). The hearing was postponed due to Plaintiff requesting time to obtain representation. (*Id.* at 36–43).

1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised

a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. (*See id.* at 24–25). If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 18–28). First, ALJ Holappa found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of October 1, 2017. (*Id.* at 18). The ALJ then found at step two that Plaintiff suffered from non-severe impairments[5] as well as the following severe impairments: "PTSD; unspecified mood disorder; borderline personality disorder; schizoaffective bipolar type; major depressive disorder; generalized anxiety disorder; social anxiety; attention deficit hyperactivity disorder ("ADHD"); and unspecified learning disorder." (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed

---

[5] ALJ Holappa acknowledged Plaintiff's diagnoses of obesity and stimulant use disorder in remission; however, he determined that these conditions were non-severe impairments with no explanation as to why he designated them non-severe. (AR at 18). As to Plaintiff's alleged disabling condition of endometriosis, ALJ Holappa determined that it was not a medically determinable impairment, as "there [was] simply no medical evidence to support the same." (*Id.*).

4

impairments under Appendix 1 of the SSA's regulations. (*Id.* at 18–20).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 18–26). Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC to perform a full range of work, but with the following non-exertional limitations:

- [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions, making simple work-related decisions, dealing with occasional changes in a routine work setting, and maintaining concentration, persistence, and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks; and

- [Plaintiff] is limited to occasional interactions with supervisors and co-workers, but less than occasional (but more than none) with the general public.

(*Id.* at 20). Based on this RFC, the ALJ found Plaintiff could not perform past relevant work during the relevant period. (*Id.* at 26).

Moving to step five, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (*Id.* at 27–28). The ALJ therefore concluded that Plaintiff's work was not precluded by her RFC and that she was not disabled at any time from October 1, 2017, through the date of the decision. (*Id.* at 28).

## IV.   DISCUSSION

Plaintiff asserts that ALJ Holappa failed to properly evaluate the medical opinion evidence of consultative examiner, Paula Hughson, M.D. ("Dr. Hughson"), and psychiatric nurse practitioner, Loretta Sparkman, DNP ("Ms. Sparkman"). (Doc. 26 at 17–20). Specifically, the ALJ did not consider supportability in assessing Dr. Hughson's opinions and failed to address supportability and consistency in analyzing Ms. Sparkman's opinions. (*Id.*) The Court agrees that ALJ Holappa failed to properly assess Ms. Sparkman's opinions and, without reaching the other claims of error, remands on that basis.

### A.   Ms. Sparkman

Plaintiff contends that the ALJ failed to properly assess the opinion of psychiatric nurse practitioner, Ms. Sparkman. (Doc. 26 at 19–20). On March 23, 2018, April 29, 2020, and August 12, 2021, Plaintiff sought treatment with Ms. Sparkman for psychiatric prescription refills and a medical cannabis card submission and subsequent renewals. (AR at 23, 473–90). Ms. Sparkman produced her medical records from the three aforementioned appointments with Plaintiff (*id.* at 473–84), and completed a Medical Source Statement: Mental Limitations on June 24, 2021 (*id.* at 474–90).

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate Ms. Sparkman's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). The revised regulation does not assign any specific evidentiary weight or deference to the medical opinions. *See* 20 C.F.R. § 404.1520c(a). The revised regulation also imposes certain "articulation requirements" on an ALJ in their evaluation of medical opinions. *See id*. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)[,]" the ALJ need not articulate how he considered each individual medical opinion; rather, he need only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1). Second, an ALJ must consider five factors when evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)–(5); however, he is generally only required to *articulate* his consideration of two of those factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors . . . for those medical opinions[,]" including the source's relationship with their client, any specialization, and other factors that tend to support or contradict the medical opinion. *Id.* §§ 404.1520c(b)(3); 404.1520c(c)(3)–(5).

While the revised regulation allows the ALJ some discretion in *how* he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* he articulates such findings as to each opinion. *See id*. § 404.1520c(b) (providing that the ALJ

6

"*will* articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record") (emphasis added). In other words, while an ALJ generally "is not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009–10, the duty to address the persuasive value of *all* medical opinion evidence of record—at least at the source level—is mandatory. *See id*.

Even so, the new regulation does not alter the standard of review. Thus, an ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). As before, an ALJ must "consider all relevant evidence in the case record[,]" *Silva v Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

Plaintiff submits that the ALJ failed to adequately explain how he considered the supportability and consistency factors for Ms. Sparkman's opinions as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 26 at 19–20). An ALJ must, at the very least, provide an *explanation* that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. 20 C.F.R. § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the "explanation must at least '[e]schew[] rote analysis and conclusory explanations [and] discuss . . . the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ." *Frazer v. Kijakazi*, No. 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (quoting *Pamela P. v. Saul*, 3:19-CV-575 DJS, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)) (subsequent citations omitted).

Here, the ALJ recounted Ms. Sparkman's examination findings, which were somewhat

7

mixed. (AR at 23–26). Throughout his decision, the ALJ noted Plaintiff endorsed a plethora of symptoms to Ms. Sparkman including, but not limited to, agitation, irritability, hostility, hypervigilance, self-destructive behavior, and anxiety. (*Id.* at 23). He also mentioned Plaintiff endorsed loss of interest, guilt, insomnia, emotional detachment, as well as other conditions. (*Id.*) The ALJ further reported that Plaintiff presented "logical thought content with some paranoia . . . oriented in all spheres," but "easily distracted attention and concentration, with intact recent memory," fair insight, judgment, motivation, and energy." (*Id.*)

Also in his decision, ALJ Holappa found on August 12, 2021, Plaintiff demonstrated good eye contact, mildly anxious behavior, appropriate appearance, constricted mood and affect, logical thought content with some paranoia, easily distracted attention and concentration, intact recent memory, insight, judgment, and impulse control as well as fair motivation. (AR at 23, 477–80). Subsequently, he determined Ms. Sparkman diagnosed Plaintiff with PTSD, chronic; major depressive disorder, recurrent and severe without psychotic features; social phobia, unspecified; generalized anxiety disorder; insomnia, unspecified; attention-deficit hyperactivity disorder, predominantly inattentive type; and schizoaffective disorder, bipolar type. (*Id.* at 23, 477). He further commented that Plaintiff reported relief of her symptoms with use of medical cannabis. (*Id.* at 24).

The ALJ also stated that Ms. Sparkman's MSEs were "largely within normal limits, except mildly anxious behavior, guarded mood and affect, logical thought content with some paranoia, easily distracted attention and concentration, and fair energy and she was noted to be oriented in all spheres with appropriate appearance." (*Id.* at 24 *citing generally* AR 466–90).

The ALJ then considered Ms. Sparkman's opinions and findings in her June 24, 2021, Medical Source Statement that Plaintiff was "'unable to meet competitive standards'" in multiple categories with other disabling limitations, such as absences from work of more than four days per month." (*Id.* at 26). ALJ Holappa offered the following conclusion: "I find the opinion and findings herein to be unpersuasive, as an overstatement of the claimant's limitations based on the objective medical evidence, including her own mental status examination observations." (*Id.*) He then

8

intimated that "Plaintiff's good eye contact, mildly anxious behavior, logical thought content, oriented, intact memory, and fair to intact insight, judgment, and impulse control" at Ms. Sparkman's MSEs did not support her opinions. (*Id.*).

Ultimately, the Court agrees with Plaintiff that the ALJ's analysis of Ms. Sparkman's opinions fails to pass muster.

### i. *Supportability Factor*

ALJ Holappa specified that he found Ms. Sparkman's opinions "unpersuasive, as an overstatement of the claimant's limitations based on the objective medical evidence, including her own mental status examination observations." (AR at 26). In other words, he found Ms. Sparkman's opinions were not internally supported by her own examination findings. Specifically, Plaintiff's normal MSE findings of: "good eye contact, mildly anxious behavior, appropriate appearance, logical thought content, oriented, intact memory, and fair to intact insight, judgment, and impulse control." (*Id.*). This conclusion, of course, bears upon the supportability factor, which considers how well a medical source supported her own opinions with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." (*Id.*).

Here, the ALJ failed to explicitly consider how Ms. Sparkman supported or failed to support her own opinions with either objective medical evidence or supporting explanations. In her statement, Ms. Sparkman opined Plaintiff could not meet the competitive standards[6] in: 9 out of 16 categories for unskilled work, 3 out of 4 categories for semiskilled and skilled work, and 2 out of 5 categories for abilities and aptitude needed for particular types of jobs.[7] (*See* AR at 24–

---

[6] Ms. Sparkman's statement defined "unable to meet competitive standards" to mean "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (AR at 488).

[7] The nine (9) unskilled work categories are: (1) maintain regular attendance and be punctual within customary, usually strict tolerances; (2) sustain an ordinary routine without special supervision; (3) work in coordination with or proximity to others without being unduly distracted; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms; (5) perform at a consistent pace without an unreasonable number and length of rest

26, 488–90). In the decision, however, ALJ Holappa did not specifically address any of Ms. Sparkman's opinions other than "absences from work for four or more days per month." (*See* AR at 26). Nor did he discuss the degree to which Ms. Sparkman's findings did not support her "could not meet competitive standards" opinions. The ALJ merely cited some of the MSE findings and summarily concluded they were insufficient to find Ms. Sparkman's opinions persuasive. There is no explanation as to *how* the normal MSE findings were inconsistent with Ms. Sparkman's opinions. Perhaps the ALJ reached his conclusion because Ms. Sparkman did not explain how mildly anxious behavior and fair to intact insight, judgment, and impulse control could impact Plaintiff's interactions with co-workers, supervisors, or her general ability to work. On the other hand, maybe the ALJ disregarded Ms. Sparkman's opinion because she did not explain how one suffering from PTSD, major depressive disorder, and generalized anxiety disorder may have sporadic episodes of good eye contact, logical thought content, and fair to intact judgment and impulse control. The ALJ, however, did not say as much, and the Court cannot conjure such rational on the ALJ's behalf. Indeed, "[j]udicial review is limited to the reasons stated in the ALJ's decision . . . ." *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). To the extent that there may be legitimate reasons for discounting Ms. Sparkman's opinions found within her own records, the ALJ simply failed to articulate with sufficient specificity those reasons.

What is more, while the ALJ detailed some of Ms. Sparkman's findings and opinions, he omitted Ms. Sparkman's other relevant findings. For instance, Ms. Sparkman's treatment notes advised Plaintiff to avoid crowds, the MSEs found her attention and concentration to be guarded, anxious, and constricted, she maintained a GAF of 55-64 demonstrating moderate difficulty in social, occupational, or school functioning. (*See* AR at 473–84). Her statement also documented that Plaintiff could not work or be around people without an anger outburst or event, despite her

---

periods; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in a routine work setting; and (9) deal with normal work stress. (AR at 488). The three (3) categories for semiskilled and skilled work are: (1) carry out detailed instructions; (2) set realistic goals or make plans independently of others; and (3) deal with stress of semiskilled and skilled work. (*Id.* at 489). The two (2) categories for abilities and aptitude for particular types of jobs are: (1) maintain socially appropriate behavior; and (2) travel in unfamiliar place. (*Id.*)

medication and therapy helping with her symptoms. (*Id.* at 485). Ms. Sparkman also noted that Plaintiff had a longstanding history of mental health issues with anger and aggressive behavior that resulted in Plaintiff quitting or being fired from prior jobs. (*Id.*) Further, Plaintiff had "homicidal tendencies." (*Id.*) In support of her opinions for unskilled work, Ms. Sparkman noted the following clinical findings: Plaintiff had a history of delusions and hallucinations, disorganized thinking, with frequent debilitating manic and depressive episodes, an inability to maintain relationships, "she is always negative and demeaning," and responds aggressively when she feels attacked or "picked on." (AR at 488). The ALJ never determined nor directly suggested how the aforementioned findings failed to support the opinions offered by Ms. Sparkman in her statement. While the ALJ could have provided a more enlightening description of Ms. Sparkman's findings as they related to Plaintiff's severe impairments, the ALJ was not "required to discuss every piece of evidence" in Ms. Sparkman's treatment notes and statement. *See Clifton*, 79 F.3d at 1009–10. Still, the ALJ's omission of relevant examination findings, when considered alongside his lack of a supportability analysis, casts doubt on the adequacy of his consideration of Ms. Sparkman's opinions. Hence, the Court finds that the ALJ's discussion of the supportability factor failed to meet the articulation standard under 20 C.F.R. § 404.1520c(b).

### ii.   Consistency Factor

ALJ Holappa's consideration of the consistency factor is equally problematic. This factor calls for a comparison between the subject medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*.

As Plaintiff points out, the ALJ's discussion of Ms. Sparkman's opinions fails to identify, even in general terms, the "objective medical evidence" he considers to be at odds with Ms. Sparkman's opinions. Nor did ALJ Holappa make any specific observations as to how Ms. Sparkman's opinions were inconsistent with other evidence of record, other than to describe them as an "overstatement of the [Plaintiff's] limitations." (AR at 26). Such a bare conclusion hardly

11

allows the Court to follow the ALJ's rationale. *See Frazer*, 2022 WL 682661, at *6 ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand.") (*citing Lobato v. Kijakazi*, No. 21-207 JB/KK, 2022 WL 500395, at *9 (D.N.M. Feb. 18, 2022); *Dwyer v. Saul*, Civ. No. 20-80 JFR, 2021 WL 1574965, at *11 (D.N.M. Apr. 22, 2021)).

For her part, the Commissioner maintains that ALJ Holappa reasonably found Ms. Sparkman's opinions unpersuasive because they were inconsistent with the record as a whole. (Doc. 30 at 13–14). Yet, the ALJ offered no such rationale in the context of his evaluation of Ms. Sparkman's opinions. Although he explained earlier in this decision that Plaintiff's MSEs undermined her own symptom and limitation allegations (AR at 24), he did not offer MSEs conducted by other providers, or any other objective medical evidence, in rejecting Ms. Sparkman's opinions. (*See* AR at 26). The Commissioner may not rationalize the ALJ's rejection of Ms. Sparkman's opinions *post hoc* as this Court's review is limited to the four corners of the ALJ's decision. *See Carpenter*, 537 F.3d at 1267. The Court thus concludes that the ALJ's articulation of his consistency analysis fails to suffice under 20 C.F.R. § 404.1520c.

### iii. *Harmful Error Analysis*

The Commissioner is adamant that no legal error occurred, but rather Plaintiff requests the Court reweigh the evidence. (Doc. 30 at 14). The Court disagrees.

The failure to adequately articulate the consistency and supportability factors only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (citation omitted). In such a case, the plaintiff is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id.* at 579. Here, Ms. Sparkman's assessment of Plaintiff's work-related abilities and the ALJ's RFC determination are inconsistent in that the RFC determination fails to account for many of the functional limitations Ms. Sparkman assessed. (Compare AR at 20, with AR at 485–90). Had the ALJ found Ms. Sparkman's opinions persuasive, he would have assigned Plaintiff a more

restrictive RFC, which in turn would have resulted in different findings at steps four and five. The ALJ's failure to adequately explain his rejection of Ms. Sparkman's opinions was not harmless. Remand is required for the proper consideration of Ms. Sparkman's opinions pursuant to 20 C.F.R. § 404.1520c.

### B.  Other Claims

Because a reevaluation of Ms. Sparkman's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V.  CONCLUSION

The ALJ erred in his review of Plaintiff's application for disability insurance benefits and supplemental security income benefits by failing to adequately evaluate medical opinion evidence in accordance with controlling legal standards. Accordingly, Plaintiff's Opposed Motion to Reverse or Remand (Doc. 26) is **GRANTED**, and the Court remands this case back to the Social Security Administration for proceedings consistent with this opinion.

*[signature]*

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**